714 So.2d 139 (1998)
Robert D. MAGILL, Plaintiff-Appellee,
v.
LOUISIANA STATE POLICE TROOP G, Through The DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Defendant-Appellant.
No. 30565-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
Paul Schexnayder, for Defendant-Appellant.
*140 William H. Ledbetter, Jr. & Associates by Michael O. Craig, Benton, for Plaintiff-Appellee.
Before MARVIN, C.J., and NORRIS and BROWN, JJ.
MARVIN, Chief Judge.
State Police Troop G through the State DPSC appeals a judgment of the trial court reversing a ruling made by DPSC, after a hearing under the Administrative Procedure Act, La.R.S. 49:950 et seq., that affirmed Troop G's removal of the plaintiff-owner and operator of towing trucks, Magill, from the rotating list of tow truck operators maintained by Troop G.
We reverse and render to affirm the ruling made under the APA.

FACTS
The State Police towing and recovery unit regulates the commercial towing and vehicle storage industry in the state. Each state police troop maintains a list of tow truck operators in the troop area who are rotated to answer a police call as the need for tows arises.
State Police procedures require that a towing business desiring to be on the rotation list file an application with its troop, submit to an inspection and safety check, maintain specified insurance coverage within specified limits, and sign a contract agreeing to the following:
To abide by the requirements of all state, parish and municipal laws and ordinances and all state police operational requirements for tow companies;
To release all personal movable items and other personal effects to the owner upon request if there is no police hold on them;
That evidence of overcharging, inconsistent charging practices, unethical business practices, or any other practice which reflects unfavorably on the state police shall result in removal from the rotation list;
That the wrecker company may be suspended or removed from the rotation list for conduct on the suspension schedule listed in the State Police Operational Memorandum, or for any actions or conduct which may reflect unfavorably on the Louisiana State Police; and
To abide by all the laws, ordinances, policies and procedures governing, regulating and affecting the wrecker business.
A towing and recovery unit in each troop recommends approval of applicants under the above guidelines to the troop commander for his or her final approval and placement of the operator on the rotation list. The operator then executes the above quoted written contract with the police troop. The rotation list for Troop G is divided into four zones, and the approved contractor-operators on the list rotate answering state police requests for towing within the appropriate zone. Among the operational requirements of a tow truck operator answering a state police call is to arrive at the site of the vehicle to be towed within 45 minutes after the call.
The appellate record, compiled in the administrative hearing and in the trial court, establishes that on September 9, 1996, another trooper in the recovery unit reported to Trooper Buddy Merritt, that Magill Wrecker's 57-minute response time on a towing call had exceeded the required 45 minutes. Trooper Merritt telephoned Mr. Magill to discuss the excessive response time.
In the course of the telephone conversation, a misunderstanding arose when Magill disputed the site of the tow in question, becoming angry and verbally abusive toward Merritt. Merritt testified that Magill responded to Merritt's comment that 57 minutes was too long, by saying: "You can kiss my ass." Magill testified that he told the trooper "You can stick it up your ass." Merritt then told Magill that his response was a good way for Magill to lose his license. Magill testified that he responded to Merritt's remark about losing his license by saying that, if Merritt came out to his place to get his tags, Merritt was liable to get shot. Merritt testified that Magill said "well, you come out here and I'll lay you out in the fucking driveway" and hung up the phone.
Merritt reported this telephone conversation to his troop commander, Captain Whitehorn, and to Lt. Ryland, the supervisor of the *141 towing and recovery unit who requested a written report from Trooper Merritt. After further reviewing Merritt's written report of the incident, Lt. Ryland recommended to Captain Whitehorn that Magill be removed from the towing and recovery rotation list. Whitehorn accepted the recommendation, after which Ryland contacted Mr. Magill's attorney and then Mr. Magill by telephone, followed by mailing a written notice. He advised both the attorney and Mr. Magill that Magill was being removed from the rotation list and explained why.
After receiving Troop G's written notice, Magill requested a hearing under Title 49. The administrative hearing was held at regional headquarters of the state police [Region 3] in Alexandria before Major Harold G. Carpenter. Major Carpenter found that Magill had remedied the insurance deficiency questioned by Troop G and had adequately explained the excessive 57-minute response time, which was excusable because of inclement weather. Major Carpenter found, however, that Magill's remarks to Merritt about Magill's losing his "tags," ["I'll lay you out in the f driveway" or "you're liable to get shot,"] justified Troop G's decision to remove Magill from the rotation list. Magill was notified by letter of Carpenter's ruling with a copy thereof and was directed to turn in his troop rotation permit stickers.
On Magill's appeal of the administrative ruling to the district court in Bossier Parish, the court allowed each party to present testimony. The trial court reversed the administrative ruling, finding
 that Magill, in the telephone conversation, was not acting in his capacity as a tow truck operator and his removal from the rotation list was beyond the authority of the state police because Magill was not charged with, or convicted of, a crime in threatening Merritt;
 that Magill's telephone threat to Merritt was not related to the regulation of the towing and recovery of vehicles by state police contractor-operators; and
 that even if Magill violated the state police order 315, he cannot be removed from the list because the order was not promulgated as required by sec. 954 of the APA.

DISCUSSION
The trial court implicitly accepted the administrative finding that Magill threatened Trooper Merritt with bodily harm if he came to Magill's place of business, but concluded that Troop G's removal of Magill from the list was arbitrary and capricious and in excess of the authority of the state police. The trial court reasoned that because the state police regulate only conduct that is related to the operation of tow and recovery vehicles, the removal of Magill for threatening bodily harm under the circumstances of this case was "an abuse of discretion."
On this record we must find as a matter of law that the trial court construed the regulatory authority too narrowly, for these reasons: The conduct of a tow truck operator need not be during the actual operation of a tow truck and retrieving a vehicle to be related to Magill's operation of his towing and recovery business. Related means connected, associated, bearing on, pertaining to, or involving. Any conduct bearing on, connected with, or involving the operation of the tow truck business on the state police wrecker rotation list is conduct related to Magill's position as the tow truck operator-contractor on the rotation list.
The business or operation of a tow truck contractor on the list necessarily includes state police oversight to assure the contractor's compliance with the policies and procedures of the state police as well as all state, parish and municipal laws and ordinances. Compliance involves maintenance of the equipment needed for the operation, insurance coverage at the proper levels, allowing access to the salvage area where vehicles are stored, appropriate charges by the company for towing and storage, and complying with the required response time, in this case, 45 minutes from the state police call.
Merritt's inquiry about Magill's 57-minute response time is directly related to Magill's tow truck operation. The 45-minute response time was obviously devised to promote highway safety by fostering reasonably *142 prompt removal of disabled or impounded vehicles from the highways of the state.
Magill's responses to Merritt arose out of Merritt's inquiry about the 57-minute response time. Once Magill told Merritt "... up your ass" or "... kiss my ass," Magill's further response to Merritt's remark about Magill's attitude causing him to lose his "tags" and place on the rotation list [the actual threat that he would do bodily harm to Merritt if he came to Magill's place to retrieve the "tags"], is directly related to the initial inquiry about Magill's 57-minute response time. In short, the telephone conversation arose out of state police efforts to assure Magill's compliance with his contractual and legal obligations and operational requirements in his tow truck operations.
The trial court's reliance on Imparato v. Louisiana State Racing Commission, 433 So.2d 398 (La.App. 4th Cir.1983) is misplaced. Imparato, a jockey who was sanctioned by a one-year suspension by the Racing Commission, had created a "disturbance" with security personnel who refused him admission to the paddock area at the race track for his lack of proper identification. He committed the same acts in the grandstand area toward a security investigator who was investigating the earlier incident. The appellate court held that enforcement of the policy against entering the paddock area without proper identification was not connected with Imparato's conduct as a jockey. Imparato's actions did not affect any race or significantly disturb any patrons.
In this case, not only did Magill's failure to observe or explain the response time about which Merritt initially inquired arise out of Magill's operation of his tow truck business, his responses and threat sufficiently disturbed Merritt and his investigation of the matter, causing him to formally report the incident to his superiors. Meritt's investigation, of course, concerned whether Magill was operating his tow truck business in accord with state police policy and Magill's contractual and legal obligations.
In Imparato, the racetrack stewards had originally imposed a 90-day suspension. The Louisiana Racing Commission, on Imparato's appeal, then imposed a longer suspension than the stewards. On Imparato's appeal to the district court, the court held the Racing Commission had exceeded its authority, and reduced the suspension to 30 days rather than the 90 days imposed by the stewards. On Imparato's appeal from the trial court ruling, the appellate court found the district court correctly found the Racing Commission exceeded its authority by increasing the suspension, but erred in reducing the 90-day suspension imposed by the stewards because the stewards' decision was not arbitrary, capricious or an abuse of discretion. The original 90-day suspension by the stewards was affirmed by the appellate court, not held to exceed the stewards' authority.
We have found that the administrative ruling on Magill's appeal to the DPS was correct: Magill's threat was made in the course of the state police's authorized inquiry into an infraction of the agency's rules concerning response time by a tow and recovery vehicle. We hold that making a threat of bodily harm to a state trooper who is in the course of his duties under the circumstances of this case warrants Magill's removal from the rotation list and is not beyond state police authority.
The general rule with regard to judicial review of the decisions made under the APA is that the ruling, made in the exercise of discretion of the administrative board or officer, will not be set aside by the courts in the absence of proof of an abuse of such discretion. The decision cannot be considered arbitrary unless it was made without reasons or reference to relevant legal considerations. Arbitrariness is the absence of a rational basis. Cannatella v. City Civil Service Commission of New Orleans, 381 So.2d 1278 (La.App. 4th Cir.1980).
The district court held the decision of Troop G was arbitrary and capricious as it bore no relation to the health, safety and welfare of the general public, citing Clark v. City of Shreveport, 655 So.2d 617 (La.App. 2d Cir.1995). The appropriate standard for determining whether Troop G's decision to terminate its relationship with Magill was arbitrary and capricious is whether or not the improper conduct was prejudicial to the agency or interferes with the efficient and *143 orderly operation of the agency. See, Dronet v. Department of Police, 613 So.2d 735 (La.App. 4th Cir.1993); Laborde v. Alexandria Municipal Fire & Police Civil Service Board, 566 So.2d 426 (La.App. 3d Cir.1990).
Clearly Magill's threat of bodily harm against Merritt interferes with the efficient and orderly operation of the state police if Magill's conduct causes a trooper, who is engaged in his duties to oversee and regulate Magill's towing operations, to be concerned for his safety. Troop G was not arbitrary and capricious, but had good cause for removing Magill from the rotation list under the circumstances of this case. See Flowers v. Department of Revenue and Taxation, 507 So.2d 240 (La.App. 1st Cir.1987). There, the termination of a tenured employee of the Department of Revenue for making threats against a superior and coworkers was held justified and affirmed on appeal.
The district court also mistakenly relied on the fact that Troop G did not seek criminal prosecution of Magill. Though not authorized to levy criminal charges or render a criminal conviction, administrative agencies are empowered to make a determination as to whether a criminal violation has occurred on matters within their jurisdiction. See Department of Public Safety and Corrections, Louisiana State Penitentiary v. Hooker, 558 So.2d 676 (La.App. 1st Cir.1990). There it was held that neither a nolle prosequi nor an acquittal of a criminal charge preclude a civil service disciplinary action on the same set of facts. 558 So.2d at 679.
The fact that Merritt chose not to file a criminal complaint against Magill does not preclude Troop G's removing Magill from the tow truck rotation list.
The trial court made a further finding that Magill could not be removed from the list for a violation of State Police Procedural Order 315 because the Order was not promulgated in accordance with the Administrative Procedure Act. Order 315 is not specifically identified in the record. It was not introduced into evidence. However, we gather from the pleadings that the Order contains specific operational requirements for tow trucks, including the 45-minute response time, and is that document referred to in the rotation list contract as the State Police Operational Memorandum.
We find it irrelevant to this case that the Order was not promulgated. Magill's removal from the rotation list was not approved by the DPS hearing officer for violation of one of the specific operational provisions of Order 315. The hearing officer specifically found that the operational transgressions cited by the towing and recovery unit were either excused or remedied.
Magill's removal from the rotation list was sustained based on his threat to a state police officer who was conducting a state police investigation. The trial court judgment does not negate or void Order 315 and the state's promulgation or lack thereof is immaterial to the resolution of this case.

DECREE
The judgment of the district court is reversed. The administrative ruling is reinstated and affirmed at Magill's cost.